## W. H. THAXTON ET AL. v. J. J. TERRELL.

### No. 1509.        Decided March 15, 1906.

**1.—Mandamus—School Land.**

Action in the Supreme Court for mandamus to require the Commissioner of the General Land Office to accept relator's application to purchase school land at its appraised value as dry grazing land, without requiring of applicants a relinquishment of the right, under the purchase, to minerals thereon, could not be maintained when the relators, though under protest, had filed the required waiver and had been awarded the land by the Commissioner. (P. 564.)

**2.—Same—Premature Suit.**

The action of the Land Commissioner in requiring applicants for the purchase of school land to release their right to minerals therein, if unauthorized, did not entitle them to mandamus requiring an unqualified acceptance; their applications having been accepted, they could complete their payments and thereafter raise the question of the right to impose the condition, by demanding a patent without such qualifications. Hazelwood v. Rogan, 95 Texas, 295, distinguished. (Pp. 564, 565.)

Original proceeding in the Supreme Court by Thaxton and others, to obtain writ of mandamus against the Commissioner of the General Land Office.

*James & Yeiser,* for relators.—The laws of the State of Texas provide, generally, for the sale of all public school land which may be classed as grazing and agricultural land to any person complying with the law, unconditionally, and without any reservation of the minerals in said land. This question is fully discussed in the case of Schendell v. Rogan, 94 Texas, 585. The law further provides for the sale of land known to contain metallic minerals and classified as mineral land, in an entirely different manner, and this court has held, in the case of Colquitt-Tigner Mining Co. v. Rogan, 95 Texas, 452, that the Commissioner of the General Land Office has the power to classify school land as mineral land, and thus compel citizens of this State to purchase it only under the mineral law above referred to. No power, however, is anywhere found which authorizes the Commissioner of the General Land Office to classify public free school land as dry grazing land, and then attach to such classification the additional classification of "mineral land," thereby, in effect, attempting to affix to such land a double classification, and then to offer it for sale by public advertisement and notice as dry grazing land, and require the applicant to release all claim to the minerals.

*R. V. Davidson,* Attorney-General, and *W. E. Hawkins,* Assistant, for respondent.

GAINES, CHIEF JUSTICE.—This is a petition for a mandamus to compel the Commissioner of the General Land Office to accept applications of relators to purchase nine sections of public free school lands. It is alleged in the petition that each of the sections had been classified as dry grazing land, and had been appraised at $1.50 per acre; that they were subject to sale without the condition of settling thereon, and that relators had applied to purchase the same and had complied with all the requirements of the statute for the purchase of such lands; but that the respondent had refused to accept their applications "unless the relators will sign a waiver on their part to all minerals which may lie in and under" the land.

The respondent avers that, "after said land had been surveyed and before notice was given of the approval of the papers and classification and valuation fixed upon said land, respondent sent his chief clerk to view the tract of land embracing the several surveys described in said petition. Said chief clerk reported in writing, among other things, that he found upon said tract of land outcroppings and lumps of coal. The parties for whom said surveys of land were made, were the superintendent of the Darwin coal mine, lying a few miles distant from said land, and two of his sons. Acting upon said report and information, respondent classified the land described in said petition as mineral lands, and so advised the parties aforesaid who had procured the making of said surveys, etc.; and also advised them that if they did not wish to buy said

land as mineral land under the statute applicable thereto, respondent would sell it to them as grazing land, provided they would execute a waiver of the minerals that might be in said land. This they declined to do. Said land was subsequently placed on the market with the mineral classifications, without valuation as such, and was also given a dry grazing classification and valuation at $1.50 per acre, in order that anyone wishing to buy same, waiving the minerals therein, would know the minimum price fixed on it by the State. Respondent shows that such is now and has been the usual custom in such cases in the General Land Office of Texas in carrying out and enforcing the provisions of article 3498n, of the Revised Statutes of 1895. Respondent further shows that after relators had filed, in this court, on December 15, 1905, a motion for leave to file said petition for mandamus therein, they, on that day, duly executed, under oath, and filed in the General Land Office of Texas, their affidavits in writing relative to minerals upon the lands described in said petition, which written instruments expressly stated that relators acquired no right, title or interest in or to any minerals that are now and may hereafter be known or found to exist in said land. Attached to said affidavits was a letter of even date therewith, signed by relators and addressed to respondent, stating in substance that said waiver was filed under protest subject to said petition for mandamus, and stating that it was the desire of relators that said mineral waiver should take effect only in the event that the Supreme Court holds that the respondent had authority to require such waivers, and that if the court so holds the relators are then willing that said waivers may take effect, and that the land be awarded to them without the right to the mineral in the same. Said affidavits were all alike in form. Respondent further shows that subsequently, on December 22, 1905, in pursuance of said waiver, and relying thereon, respondent awarded to relators the land aforesaid, and that said award was made in conformity to the usual custom of the General Land Office in such cases."

Since it appears from the answer of the respondent that after the filing of the petition in this case, the relators have complied with the ruling of the Commissioner—though under protest—and have agreed to accept the lands under their applications without the minerals, we are of opinion that a mandamus should be refused. But for this, we would probably have been compelled to decide the question of the correctness of the respondent's ruling. But having changed their attitude since the petition was filed, we think relators' action in that particular should be treated as a practical abandonment of this suit.

There is still another reason why we think the writ should be refused. We have held that an applicant to purchase school lands whose application has been wrongfully rejected may maintain a suit against the Commissioner for a mandamus, although he may be able to assert his right in a suit at law. (Hazelwood v. Rogan, 95 Texas, 295.) But does that rule apply here? It is the right of a purchaser of school lands to have his standing as such recognized in the land office to the end that he may comply with the obligations required by the statute; namely, make his payments, occupy the lands, prove his occupancy after three years, and, upon making full payment, demand a patent. This he

can not do under an application which has been rejected, though valid. Such is not the position of relators in this case. Their applications have been accepted and they are recognized as purchasers. They may make their payments and demand and receive their patents as in any other case. If the Commissioner is right in holding that they are entitled to the land without the minerals, they certainly have no cause of complaint. If he is wrong, then in our opinion, he had no power to annex as a condition to his acceptance of the applications, that the applicants should renounce all rights to the minerals in the land, and his action in that respect was without authority and void. The case cited recognizes the rule that one who has applied to purchase school lands which were upon the market for sale and who has complied with all the requirements of the statute, has fixed his right as a purchaser, with all the rights and incidents conferred by the statute for the sale of such lands. Hence, if relators are justified in their contention, they may proceed to make their payments and to perfect their title; and when they have discharged their obligations in full may demand patents to the lands without any reservation whatever. However desirable it may be to the parties to this suit to have the question as to the construction of the statutes settled, we think that in this case the attempt to raise it is premature, and therefore we refuse the writ.